IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

THE NATIONAL RANGER MEMORIAL      *
FOUNDATION, INC.,
                                  *
        Plaintiff,
                                  *
vs.                                          CASE NO. 4:23-cv-170 (CDL)
                                  *
UNITED STATES DEPARTMENT OF
DEFENSE, *et al.*,                *

        Defendants.               *

_____

O R D E R

Congress enacted a law requiring the Secretary of Defense to implement a plan to remove from Department of Defense assets "all names, symbols, displays, monuments, and paraphernalia that honor or commemorate . . . any person who served voluntarily with the Confederate States of America."  William M. Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 370(a), 134 Stat. 3388, 3553 ("NDAA").  Pursuant to the recommendation of the Commission appointed to develop criteria for determining which items to remove, the Army removed two items from the Ranger Memorial at Fort Moore: a Ranger Walk paver and a Ranger Hall of Fame wall panel, both inscribed with the name of Confederate Colonel John Singleton Mosby.  The National Ranger Memorial Foundation, Inc., ("NRMF") brought this action seeking the replacement of those two items.  Defendants filed a motion to

dismiss the operative Complaint (ECF No. 27), which is granted for the following reasons.

STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

"For purposes of Rule 12(b)(6) review . . . a court generally may not look beyond the pleadings." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). But "[t]he pleadings include any information attached to a complaint" and "a district court may consider an extrinsic document" in deciding a motion to dismiss under Rule 12(b)(6) "if it is (1) central to the

plaintiff's claim, and (2) its authenticity is not challenged."
*Id.*    A district court may also "consider judicially noticed
documents."    *Id.*

BACKGROUND

The NRMF alleges the following facts in support of its claims.
The Court must accept these allegations as true for purposes of
the pending motion.    This background section also discusses the
NDAA, a statute central to this action, documents attached to the
original Complaint, and the Naming Commission's report, a document
which is central to the Plaintiff's claims, the authenticity of
which is not challenged by any party.

This action concerns the removal of items bearing the name of
Colonel John Singleton Mosby.    Mosby was an antebellum lawyer who
opposed slavery and secession but joined the Confederate Army at
the outbreak of the Civil War.    He was eventually placed in command
of the 43rd Virginia Cavalry, a Confederate Army unit which came
to be known as "Mosby's Rangers."    Some of the tactics Mosby
employed in this unit are still taught and utilized by U.S. Army
Rangers today.

After the Civil War, Mosby became a Republican and served as
a campaign manager for Ulysses S. Grant in his presidential run.
Mosby remained prominent in Republican politics throughout the
post-war period and served as U.S. Consul to Hong Kong, an official

for the Department of the Interior, and an Assistant Attorney General for the Department of Justice.

In 1992, the NRMF was founded with the goal of constructing a National Ranger Memorial to honor and commemorate all who have served or are serving as U.S. Army Rangers. In 1993, the NRMF "offer[ed] the U.S. Army Infantry, Ranger Memorial Walk to the U.S. Army for placement at Fort Benning," today called Fort Moore. Complaint Ex. A, Letter from NRMF to Gen. White 1 (Mar. 9, 1993), ECF No. 2-2 (hereinafter "Offer Letter"). The NRMF also stated it was "prepared to provide all construction and future maintenance for the memorial at no expense to the U.S. Army." *Id.* The Army accepted NRMF's offer "to construct, at no cost to the Government, the U.S. Army Infantry, Ranger Memorial Walk." Complaint Ex. B, Letter from the Acting Secretary of the Army to NRMF 1 (Apr. 29, 1993), ECF No. 2-3 (hereinafter "Acceptance Letter").

A subsequent letter was issued to the NRMF from the Army bearing the subject line "Acceptance of a Conditional Gift." Complaint Ex. C, Letter from the Army Regarding Gifts of Services 1 (May 4, 1993), ECF No. 2-4 (hereinafter "Service Gifts Letter"). This letter stated that while the Army accepted the NRMF's "gift of construction . . . [t]he Judge Advocate General has given [the Army] guidance . . . [that] the Army may not accept gifts of services" such as NRMF's "gift offer of maintenance services." *Id.* Accordingly, the letter advised the NRMF of "two alternative

methods of funding the maintenance service of the memorial walk."
*Id.*  The first option was that the NRMF could raise the necessary
funds, and then "the money could be donated to the Army on the
condition that a maintenance trust fund be established to pay for
maintenance of the memorial walk.  The gift proffer could also
specify that a particular maintenance schedule be followed."  *Id.*
The second was that "the [NRMF] could make annual donations of the
money needed to perform the maintenance it desires."  *Id.*
Ultimately, the NRMF chose to make annual donations of money which
it raised by taking donations and selling granite pavers on the
Ranger Walk.  *See* Second Amended Complaint ¶¶ 30, 32, ECF No. 24;
Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss 17, ECF no. 33-1.

The Memorial took the form of a Ranger Walk comprised of
granite pavers, which can be purchased and inscribed with the name
of a current or former Ranger, and a Ranger Hall of Fame, which is
a granite semi-circular wall which contains names of former Rangers
voted on by a panel of civilians and Rangers in annual "classes."
Mosby was a member of the Ranger Hall of Fame's inaugural class,
and his name was inscribed on the wall when it was built.  A
granite paver inscribed with Mosby's name was also installed on
the Ranger Walk.

Effective January 1, 2021, Congress enacted the William M.
Thornberry National Defense Authorization Act for Fiscal Year 2021
("NDAA") which mandated that the Secretary of Defense "establish

a commission relating to assigning, modifying, or removing . . . names, symbols, displays, monuments, and paraphernalia to assets of the Department of Defense that commemorate the Confederate States of America or any person who served voluntarily with the Confederate States of America." NDAA § 370(b). The Commission was directed to "develop procedures and criteria to assess whether an existing name, symbol, monument, display, or paraphernalia commemorates the [Confederacy] or person who served voluntarily with the [Confederacy]" and to "develop a plan to remove names, symbols, displays, monuments, or paraphernalia that commemorate the [Confederacy] or any person who served voluntarily with the [Confederacy]" from Department of Defense assets "within the timeline established by th[e] Act." *Id.* § 370(c)(2), (4). The Commission was to "include in the plan procedures and criteria for collecting and incorporating local sensitivities associated with" naming or renaming any Department of Defense assets. *Id.* § 370(c)(5).

The NDAA required that the Commission "present a briefing and written report detailing the results of the requirements under subsection (c), including: (1) a list of assets to be removed or renamed." *Id.* § 370(g)(1). It also provided that "the Secretary of Defense shall implement the plan submitted by the commission described in paragraph (b) and remove all names, symbols, displays, monuments, and paraphernalia that honor or commemorate the

[Confederacy] or any person who served voluntarily with the [Confederacy] from all assets of the Department of Defense." *Id.* § 370(a).

Between August and September 2022, the Commission published its report to Congress in three parts.[1]  In this report, the Commission included its criteria for when an asset should be removed, as mandated by the NDAA.  The Naming Commission, *Final Report to Congress, Part I: United States Army Bases* 8 (Aug. 2022), https://perma.cc/PEB2-8HGC (hereinafter "Part I").[2]  Criteria for removal included whether the asset "commemorates an individual's federal service prior to, or after, the Civil War," whether the "commemoration of the Confederacy or a person who served voluntarily with the Confederacy is the core purpose and presentation of the asset," and whether "[r]emoval is reasonably necessary to expunge the commemoration." *Id.*  To take into account local sensitivities as required by the NDAA, the Commission decided to visit every installation under consideration for renaming, including Fort Moore and engage with on-post and off-post

---

[1] Part I concerned U.S. Army Bases, Part II concerned the U.S. Military Academy and the U.S. Naval Academy, and Part III addressed any remaining Department of Defense assets.  Only Parts I and III are relevant to this action.

[2] Neither party filed a copy of the body of Part I into the record, but both the Complaint and the briefing on the pending motion to dismiss discuss Part I.  The Court cites to an electronically archived and publicly available copy of Part I provided by the U.S. Government Publishing Office.  Neither party has disputed the authenticity of this document, and the Court finds that it is central to the NRMF's claims.

stakeholders for feedback. *Id.* at 9. NRMF was never contacted by the Naming Commission for its input.

Part I of the Commission's report lists several assets for removal at Fort Moore, including the recommendation "that the Army remove the name of COL John S. Mosby (CSA) from display both on the Ranger Memorial, and from display in the Ranger Hall of Honor" at Fort Moore and the recommendation that "the names of all Confederates" be removed "from paver stones on the Ranger Memorial Walk leading to the Ranger Memorial." *Id.* at 21. Part I also had several appendices, one of which, Appendix F, was titled "Confederacy-Affiliated Asset Inventory." *Id.* at 86. It had a text introduction describing it as an "inventory list [which] represents only those Department of Defense assets located on, or managed by, the nine Army bases" which were affiliated with the Confederacy and which stated that "[a] complete list of all known Confederacy-affiliated assets across the Department of Defense appears in the third part of the report." *Id.* Although the Mosby paver and Mosby inscription on the Ranger Memorial were listed in the body of Part I, they were not re-included in this appendix, which listed other assets named after Mosby for renaming or removal. *Id.* at 87.

In Part III of the report, the Commission made "recommendations for the disposition of all Confederacy-affiliated and named Department of Defense assets *not already covered in*"

Part I or Part II. Am. Compl. Ex. D, The Naming Commission Report to Congress Part III (September 2022), ECF No. 2-5 at 5 (hereinafter "Part III") (emphasis added).[3]  Appendix C to Part III of the report contained another "Confederacy-Affiliated Asset Inventory" and stated that "assets at the nine Army bases . . . already reported in *Part I: U.S. Army Bases* . . . are not listed here." *Id.* at 29.  This appendix did not mention the specific Mosby items at issue in this action but did recommend the removal or renaming of other assets named for Mosby. *Id.* at 37.  The Commission later provided a supplemental inventory of Confederate-affiliated assets, which included other assets named for Mosby but again did not re-list the paver and Ranger Memorial inscription at issue in this action. Am. Compl. Ex. E, Supplemental Inventory 6, ECF No. 2-6.

Secretary of Defense Lloyd Austin approved the Commission's plan and directed it to be implemented consistent with the NDAA. The Fort Moore Garrison Commander informed NRMF that the Mosby paver and Ranger Hall of Fame wall panel bearing Mosby's name were to be removed from the Ranger Memorial pursuant to the recommendation in the body of Part I of the report.  Around December 2023, the items were removed.

---

[3] When NRMF filed its Amended Complaint, it did not refile the exhibits. Instead, it referenced the exhibits that were attached to the original Complaint.  The Court cites to the page number generated by CM/ECF for Part III because the report's original page numbers cannot be viewed in the version of the document attached to the Complaint.

NRMF then brought this action against the Department of Defense, Secretary Austin, Under Secretary LaPlante, the U.S. Army, and Secretary of the Army Wormuth (the "DoD Defendants") as well as the Naming Commission and its Commissioners in their official capacities (the "Commission Defendants"). NRMF seeks the restoration of the Mosby items to their former places in the Ranger Memorial.

## DISCUSSION

NRMF asserts three claims in its operative complaint. In Count I, it claims that the DoD Defendants violated the Administrative Procedure Act ("APA") by removing the Mosby items, or in the alternative, that the Commission Defendants violated the APA by recommending their removal. In Count II, NRMF seeks a declaratory judgment that the removal violated § 370 of the NDAA.[4] Finally, in Count III, NRMF seeks a declaratory judgment that the removal of the Mosby items violated the terms of its conditional gift of the Ranger Memorial to the Army.

### I.    APA Claim Against DoD Defendants

In Count I of the operative Complaint, NRMF claims that the DoD Defendants violated the APA by removing the Mosby items. The APA empowers a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . .

---

[4] The NRMF acknowledged at the hearing held on December 12, 2024, that it abandoned this claim.

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).

NRMF argues that the DoD Defendants acted in excess of their statutory authority under the NDAA, because NRMF contends that the Mosby items were not included in the Commission's lists of assets to be removed in the appendices to Parts I and III of the report and the supplemental inventory.  The NDAA required the Commission to "present a briefing and written report detailing the results of the requirements under subsection (c), including: (1) a list of assets to be removed or renamed."  NDAA § 370(g)(1).  NRMF argues that because the only itemized lists in the report were the appendices to Parts I and III and the supplemental inventory, and because the Mosby items were not included in those appendices or the supplemental inventory, then those items cannot lawfully be removed.  NRMF maintains this position even though the body of Part I states plainly that the Commission "recommends that the Army remove the name of COL John S. Mosby (CSA) from display both on the Ranger Memorial, and from display in the Ranger Hall of Honor" at Fort Moore and recommends that "the names of all Confederates," like Mosby, be removed "from paver stones on the Ranger Memorial Walk leading to the Ranger Memorial."  Part I at 21.

The Court begins with the statute. It states that the Commission must produce a report which contains a list of items to be removed. It does not specify what form that list should take and does not mandate that it must be an itemized appendix or inventory. The statute's plain language does not preclude an interpretation that items could be listed for removal in the body of the report, as the Mosby items were.

NRMF nonetheless interprets the NDAA's "list" requirement to mean that the Commission must make an itemized list of assets for removal and append it to the report, and only the items on the appendix's itemized list may be removed. But "the legislature is presumed to act with sensible and reasonable purpose, [so] a statute should, if at all possible, be read so as to avoid an unjust or absurd conclusion." *Durr v. Shinseki*, 638 F.3d 1342, 1349 (11th Cir. 2011) (quoting *In re Graupner*, 537 F.3d 1295, 1302 (11th Cir. 2008)). NRMF's interpretation would lead to the absurd conclusion that the Commission could list items to be removed in plain language in a "Recommendations" section in the main body of the report, as it did, but removing those items would be unlawful if the Commission did not re-list them in a later itemized appendix. This outcome would be especially absurd when considering that Appendix C to Part III states that "assets at the nine Army bases . . . already reported in *Part I: U.S. Army Bases* . . . are not listed here." Part III at 29. This language in the appendix,

which NRMF agrees is part of the "list" for removal, acknowledges that it is unnecessary to re-list items that were already listed elsewhere, including those items "reported in *Part I*."  It is undisputed that the body of Part I clearly reports the Commission's recommendation that the Mosby Paver and Mosby inscription on the Ranger Memorial be removed. The Court is satisfied that when the Commission listed the Mosby items in the Fort Moore "Recommendations" section of Part I, it intended that those items would be part of the "list of assets to be removed" from Fort Moore.  To conclude otherwise places form over substance.  The DoD Defendants did not exceed their statutory authority by removing the Mosby items.  Defendants' motion to dismiss is granted as to this claim.[5]

---

[5] The NRMF argued at the hearing held on December 12, 2024, that the inclusion of the Mosby items in the body of the report, but not in Appendix F to Part I of the report, could create an ambiguity as to whether it was the intent of the commission that they be removed.  While it would have made matters clearer if the Commission had re-listed the Mosby items in Appendix F, the Court is satisfied that no such ambiguity exists.  First, Appendix F to Part I states that "[a] complete list of all known Confederacy-affiliated assets across the Department of Defense appears in the third part of the report."  Part I at 86.  Therefore, even the "list," which NRMF claims is the complete exhaustive list of items for removal, acknowledges that it is not the complete list of items to be removed.  In fact, in Appendix C to Part III of the report, the Commission states that "assets at the nine Army bases . . . already reported in *Part I* . . . are not listed here."  *Part III* at 29.  Therefore, "the complete list" in Part III incorporates by reference those items reported in Part I, *not just those in Part I's Appendix F*.  The body of Part I clearly reports the Mosby items at issue here.  The Court finds no ambiguity in the Commission's clear recommendation that the Mosby items specifically described in the body of Part I of the report should be removed.

## II.  APA Claim Against Commission Defendants

NRMF's primary claim in Count I was that the DoD Defendants violated the APA by removing the Mosby items even though they were not in the "list" for removal.  In the alternative, NRMF alleged that if the Mosby items were on the "list," as the Court has now determined, then the Commission Defendants violated the APA by including them for removal.  NRMF argues that recommending these items for removal was contrary to the Commission's own removal criteria, so it was arbitrary and capricious in violation of the APA.[6]

Defendants argue that the Court lacks subject matter jurisdiction over the claim against the Commission Defendants, and that this claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  The Court agrees that the claim against the Commission Defendants is moot, and thus the Court has no subject matter jurisdiction over this moot claim.  It is undisputed that the Commission was disbanded long before this action was filed, and there is no indication that the Commission will reconvene.  "A case becomes moot only when it is impossible for a

---

[6] NRMF abandoned any claims it may have asserted against the Commissioners in their individual capacities.  Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss 11 n.6.  Additionally, the claims against the former Commissioners in their official capacities are treated as claims against the Commission.  "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent'" and "the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

court to grant 'any effectual relief whatever to the prevailing party.'" *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)) (internal quotation marks omitted). "[I]f a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004).

After publishing the report, the Commission disbanded on October 1, 2022. Suwanda Decl. Ex. A, Final Note from the Commission 1, ECF No. 27-2.[7] The Commission therefore does not exist. A nonexistent entity cannot have a "personal stake" in the outcome of litigation, which is necessary to "limit[] judicial power to disputes capable of judicial resolution." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). Additionally, there is no indication that it will ever reconvene. *Cf. City of Erie*, 529 U.S. at 287 (finding case was not moot in part because the company that previously operated a nude dancing establishment and closed it remained incorporated under state law and could potentially re-open a similar establishment). The Court cannot

---

[7] The Court considered this note only in its evaluation of Defendants' Rule 12(b)(1) challenge to the Court's jurisdiction over the Commission Defendants. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) ("For purposes of Rule 12(b)(1) review for a factual attack on jurisdiction, . . . the district court [is] permitted to consider extrinsic documents.").

order any relief from a non-existent entity, so the claims against the Commission are moot. *See Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*, 453 F.3d 1309, 1313-14 (11th Cir. 2006) (finding that a suit could not be maintained against the Panama Canal Commission and the Office of Transition Administration once they dissolved without a statute providing otherwise).

NRMF argues that the relief sought, replacement of the Mosby items, is still possible after the dissolution of the Commission, presumably because another entity could replace the items. But this misses the point—that the Court cannot order relief from a non-existent entity. So, there is no action this Court could order *the Commission Defendants* to take that could provide any effectual relief to NRMF. Thus, the Commission Defendants have no stake in this litigation and the NRMF's claim against the Commission Defendants is moot.

The Court observes that even if the claims against the Commission Defendants were not moot, and their recommendation to remove the Mosby items was a final agency action capable of APA review, they clearly followed their own standards and the statutory requirements such that their actions did not violate the APA. The Court finds unpersuasive NRMF's argument to the contrary. NRMF argues that the Mosby items do not commemorate his service with the Confederacy. However, these items explicitly commemorate

Mosby because of his service as a Ranger, and he only served as a Ranger while a soldier in the Confederate Army. Therefore, they necessarily commemorate his Confederate service and not his subsequent service for the federal government. These are not monuments to "Mosby the Man" or "Mosby the U.S. Consul to Hong Kong." These assets memorialize Mosby *as a Ranger*, a position he held exclusively in service to the Confederacy. Further, it is undisputed that Mosby voluntarily served in the Confederacy, another criterion for removal.

The NRMF also complains that the Commission failed to keep its promise to take into account local sensitivities in making its removal decision, citing the fact that the Commission never met or corresponded with the NRMF. However, the report indicates that the Commission visited the bases where assets existed that were being considered for removal or renaming, including Fort Moore; in fact, the report even has a picture of a commissioner viewing the pavers at the Ranger Memorial. Part I at 20. Before these visits, the Commission met with senators, representatives, and governors for the respective states and during these visits, the Commission "met with community stakeholders across the visited bases to get a sense of local sensitivities." *Id.* at 10. They also established a website allowing anyone to provide feedback directly to the Commission. NRMF conveniently ignores these facts.

Because the APA claim against the Commission Defendants is moot, it must be dismissed.  But even if the Court had jurisdiction to consider it, the claim would be dismissed on the merits.  The Commission did its duty by following the statutory requirements imposed upon it by the statute enacted by the United States Congress.

## III. Claims Based on Conditional Gift

In a futile attempt to sustain some type of claim in its attempt not to leave Col. Mosby behind, NRMF makes a novel argument in support of Count Three that its offer to gift the Memorial to the Army was conditional, and the Defendants breached this condition by removing the Mosby items.  Because a review of the documents attached to the complaint makes plain that NRMF's gift of the Memorial to the Army was not conditional, all of these conditional gift claims fail.

"[W]hether a gift is conditional . . . is a question of the donor's intent, to be determined from any express declaration by the donor at the time of the making of the gift or from the circumstances." *Shadder v. Holland*, 828 S.E.2d 418, 420 (Ga. Ct. App. 2019) (citation omitted).[8]  Further, "the mere fact that the donee fails to do what the donor hopes and expects of the donee does not warrant the revocation of the completed gift." *Id.*  Where

---

[8] Neither party disputes that the legal issues relating to this gift made in Georgia should be analyzed under Georgia law.

the donor's intent is unclear, "it would be inequitable to carry a [condition] into effect." *Id.* at 420-21 (quoting *Holcim (US) v. AMDG Inc.*, 596 S.E.2d 197, 200 (Ga. Ct. App. 2004)).

Here, the NRMF alleges its gift of the Memorial to the Army was conditioned on NRMF being the exclusive entity that could pay for or provide future construction and maintenance on the Memorial. NRMF attempts to convert this maintenance offer into a condition that the Memorial could only be disturbed with NRMF's express permission. NRMF's factual allegations surrounding the gift do not support this conclusion which the Court finds implausible. NRMF's argument simply does not square with the offer or the circumstances surrounding the Army's acceptance. NRMF's offer only stated that it "offer[s] the U.S. Army Infantry, Ranger Memorial Walk to the U.S. Army for placement at Fort [Moore]" with no mention of any conditions on that offer. Offer Letter 1. Further, when discussing construction and future maintenance, the NRMF says it is "prepared to provide all construction and future maintenance" for the Memorial. *Id.* This reads as an offer of these services, but nothing in the offer letter makes the gift conditional on NRMF's provision of these services, much less the *exclusive* provision of these services. Nor does the offer suggest that this alleged exclusive maintenance would prevent the Army from ever disturbing the Memorial in any way. There was also no

mention of any condition in the Army's initial acceptance of the offer.    Acceptance Letter 1.

The second letter sent to NRMF from the Army does include a subject line reading "Acceptance of a Conditional Gift" which post-dated the Army's acceptance of the offer to construct the Memorial. Service Gifts Letter 1.    However, the letter explains that the Army Judge Advocate General advised that the Army could "not accept gifts of services" even though the gift of construction "[was] acceptable."    *Id.*    So, in this letter the Army proposed two alternative methods through which NRMF could fund the maintenance it desired for the Memorial, since its original offer, to simply handle any construction and maintenance, was a gift of service that the Army subsequently learned it could not accept.    *Id.*    The first of these two alternatives was that the funds for maintenance "could be donated to the Army *on the condition* that a maintenance trust fund be established" for the Memorial and that "gift proffer could . . . specify that a particular maintenance schedule be followed."    *Id.* (emphasis added).    Ultimately, NRMF did not choose this alternative.    Instead, it elected to pursue the second of the Army's proposals, which was that NRMF "make annual donations of the money needed to perform the maintenance it desires."    *Id.* Accordingly, there is nothing about the circumstances of the funding method set up by NRMF or in any of its expressions as the donor which would imply that its gift was conditional on NRMF

having exclusive rights to conduct maintenance on the Memorial. There certainly was no condition that the Army could never disturb the Memorial.  The parties were simply trying to determine the best way to allow the public to support the maintenance of the Memorial.

The Court notes that nothing prevents NRMF from continuing to provide maintenance for the Memorial.  NRMF may still donate money for the upkeep of the Memorial.  To the extent that a maintenance related condition existed, it has not been breached.

The Court further finds NRMF does not have a property interest in the Memorial that entitled it to a hearing before the Mosby items were removed.  "The requirements of procedural due process apply only to the deprivation of interests encompassed in the [Fifth] Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  "In deciding whether a person possesses a property interest" the Court must look to "existing rules or understandings that stem from an independent source such as state law." *Dixon v. Metro. Atlanta Rapid Transit Auth.*, 529 S.E.2d 398, 400 (Ga. Ct. App. 2000) (quoting *Bd. of Regents*, 408 U.S. at 577).

Here NRMF alleges two potential sources for the property right impeded by the removal of the Mosby items.  The first is that it has an interest in the Memorial because the Defendants violated a condition on its gift of the Memorial to the Army.  As previously

explained, there was no such conditional gift so this cannot be a source of a property right for NRMF.  The next is that NRMF argues that it had a property right to sell pavers on the Memorial Walk, which was impeded by the removal of the Mosby paver.  However, the removal of the Mosby paver did not limit NRMF's right to sell pavers.   It only restricted pavers to Rangers who did not voluntarily serve in the Confederate Army.  Since NRMF cannot identify a property interest that was violated by the removal of the Mosby items, its procedural due process claim fails.

Finally, NRMF argues that Georgia law dictates that the Army hold the Memorial in trust for NRMF because a purpose of the gift failed.  "If a gift is made for a specific purpose which is either expressed or is secretly understood and the purpose . . . fails or cannot be accomplished, the donee shall hold the object of the gift as trustee for the donor or his next of kin."  O.C.G.A. § 44-5-87.  NRMF asserts two potential purposes which failed and would trigger a constructive trust.  First, NRMF claims that a specific purpose of the gift was that only NRMF provide maintenance for the Memorial.  As explained previously, maintenance of the memorial was not a condition of the gift or a specific purpose for which the gift was made.

NRMF next argues in support of the constructive trust claim that a purpose of the gift was to honor all Rangers, and the removal of the Mosby items caused this purpose to fail.  However,

there was no expression and nothing from the circumstances implied that the gift's purpose would be frustrated if every single Ranger, even ones who never served in the U.S. Army, such as Mosby, were not honored on the Memorial.  While the Memorial honors Rangers, this does not entitle every Ranger to have their name listed on the Hall of Fame or risk the purpose of the gift failing; this is borne out by the fact that only Rangers voted on by the civilian and Ranger panel will have their names inscribed on the Memorial. This same rationale extends to the pavers.  Every Ranger is not listed on the pavers.  Only those who have a paver purchased for them are commemorated with a paver.

Part of the irony here is that the Memorial and Paver Walk honor those who valiantly gave devoted service to defend and protect the United States of America as *United States Army Rangers*. It is preposterous to suggest that the purpose for such a tribute is frustrated by the exclusion of those who fought *against* the United States.   NRMF's constructive trust claim borders on frivolous.

CONCLUSION

Mosby's ranger tactics and methods may be worthy of admiration and respect in some quarters.  But other Americans may genuinely conclude that the development and deployment of them as an officer of the Confederate States of America in an open rebellion against the United States adds a treasonous taint that overcomes the

appropriateness of any tribute to the effectiveness of some specific maneuver or survival technique. It is beyond reasonable dispute that the United States Congress, consisting of the duly elected representatives of the American people, has the authority to decide whether Mosby should be memorialized and honored on a United States military installation. Congress has determined that he should not be, and the Court finds that its determination was properly implemented by the Secretary of Defense. NRMF's allegations do not state any plausible legal claim upon which relief may be granted. Accordingly, Defendants' motion to dismiss (ECF No. 27) is granted.

IT IS SO ORDERED, this 16th day of December, 2024.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA